**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

HIGHER EDUCATION COQUI LLC,

Plaintiff,

v.

2U, LLC,

Defendant.

Civil Action No. 26-934-GBW

Robert K. Beste, Matthew B. Goeller, K&L GATES, LLP, Wilmington, DE 19807; Jennifer H. Thiem, K&L GATES, LLP, Charleston, SC 29401; A. Lee Hogewood, III, K&L GATES, LLP, Raleigh, NC 27603

*Counsel for Plaintiff*

Robert L. Burns, Jason J. Rawnsley, Nicole M. Henry, Gabriela Z. Monasterio, RICHARDS, LAYTON & FINGER, P.A., Wilmington, DE 19801; Maria Ginzburg, Joshua S. Margolin, Julie Singer, Stephen Federowicz, SLENDY GAY PLLC, New York, NY 10104

*Counsel for Defendant*

**MEMORANDUM OPINION**

November 24, 2026
Wilmington, Delaware

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

Pending before the Court are Plaintiff Higher Education Coqui LLC's ("Higher Education") Motion for Preliminary Injunction (the "Preliminary Injunction Motion") (D.I. 10) and Motion for Expedited Discovery (the "Expedited Discovery Motion") (D.I. 13), which have been fully briefed. D.I. 11, 13, 33, 35, 37, 38. For the reasons set forth below, the Court DENIES Plaintiff's Preliminary Injunction Motion and Expedited Discovery Motion.

## I. BACKGROUND

Higher Education provides marketing and technology services to businesses and educational institutions offering online education. D.I. 2 at ¶ 14. Defendant 2U, LLC ("2U") is an education technology company that collaborates with academic institutions to offer online courses. D.I. 33 at 3. Higher Education and 2U entered into a Master Licensing and Services Agreement (the "Agreement") in July 2024 under which Higher Education provided 2U with "personalized experience[s]" and "digital marketplace merchandising." D.I. 2, Ex. A at 2; D.I. 11 at 1; D.I. 33 at 3.

Higher Education first filed a case against 2U in the United States District Court for the District of South Carolina alleging trade secret misappropriation and refiled in this District after 2U challenged personal jurisdiction in the District of South Carolina. D.I. 38 at 5; *see also Higher Education Coqui LLC v. 2U, LLC*, 0:26-cv-02255-SAL (D.S.C. 2026) (hereinafter, the "South Carolina Litigation"). During the South Carolina Litigation, Higher Education moved for a temporary restraining order and a preliminary injunction, making similar arguments to those in the instant Motion for Preliminary Injunction before the Court. *Compare* D.I. 11 *with* South Carolina

Litigation, D.I. 4. The South Carolina court held a hearing on Higher Education's preliminary injunction motion on July 13, 2026 (the "South Carolina Hearing"). South Carolina Litigation, D.I. 45. Higher Education voluntarily dismissed the South Carolina Litigation on July 28, 2026, prior to the court ruling on Higher Education's preliminary injunction motion. South Carolina Litigation, D.I. 53.

Having dismissed the South Carolina Litigation, Higher Education re-filed its case against 2U in this Court on July 30, 2026, adding causes of action for breach of contract and declaratory judgment. D.I. 2. Thereafter, Higher Education filed the instant Motion for Preliminary Injunction (D.I. 10) and Motion to Expedite Discovery (D.I. 13).

## II. LEGAL STANDARDS

### A. Standard for a Preliminary Injunction

A preliminary injunction is an "extraordinary remedy" that is granted "only in limited circumstances." *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (citation omitted). "A party seeking a preliminary injunction must show: (1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." *Id.* (citation omitted). Movants face a "heavy burden," *Lane v. New Jersey,* 753 Fed. App'x. 129, 131 (3d. Cir. 2018), and must establish entitlement to relief by "clear evidence," *Doe by and through Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518, 526 (3d Cir. 2018) (citing *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 22 (2008)). Failure to establish any of the elements, especially either of the first two, renders preliminary injunctive relief "inappropriate." *Arrowpoint Capital Corp. v. Arrowpoint Asset Mgmt, LLC*, 793 F.3d 313, 319 (3d Cir. 2015) (quoting *NutraSweet Co. v. Vit-Mar Enters., Inc.*, 176 F.3d 151, 153 (3d Cir. 1999)).

### B. Standard for Expedited Discovery

"Neither the Federal Rules of Civil Procedure nor the Third Circuit Court of Appeals has established a standard governing motions to expedite discovery." *Woodford Eurasia Assets Ltd. v. Lottery.com, Inc.*, 2023 WL 8005621, at *5 (D. Del. Nov. 17, 2023) (citing *Schaper v. Lensar, Inc.*, 2023 WL 4532462, at *3 (D. Del. July 13, 2023)). "Courts, however, have broad discretion to manage the discovery process, and can expedite or otherwise alter the timing and sequence of discovery." *Id.* (citation omitted).

## III. DISCUSSION

### A. Plaintiff's Motion for a Preliminary Injunction

For the reasons discussed below, Higher Education has failed to show a likelihood of success on both its trade secret and breach of contract claims. To demonstrate a likelihood of success on the merits, Plaintiff must show that it "can win on the merits (which requires a showing significantly better than negligible but not necessarily more likely than not)." *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017), *as amended* (June 26, 2017).

The parties have provided several pieces of evidence the Court has considered in deciding the Preliminary Injunction Motion including Higher Education's verified complaint (D.I. 2), the exhibits attached to the complaint (D.I. 2, Exs. A–V) including the Agreement between the parties (D.I. 2, Ex. A), and the transcript from the South Carolina Hearing (hereinafter, "Transcript of South Carolina Hearing") (D.I. 34, Ex. 1). The Court can rely on these materials for the purpose of granting or denying a preliminary injunction. *Kos Pharma*, 369 F.3d at 718 ("[A] district court may rely on affidavits and hearsay materials which would not be admissible evidence for a permanent injunction." (citation omitted)). Having reviewed Plaintiff's Preliminary Injunction Motion and the evidence provided, the Court finds that an additional hearing is not required to

adjudicate the Preliminary Injunction Motion. *Bradley v. Pittsburgh Bd. of Educ.*, 910 F.2d 1172, 1175–76 (3d Cir. 1990) ("[A] decision [regarding issuing or denying a preliminary injunction] may be based on affidavits and other documentary evidence if the facts are undisputed and the relevant factual issues are resolved" or "the movant has not presented a colorable factual basis to support the claim on the merits or the contention of irreparable harm." (citation omitted)).

Higher Education argued that it can show a likelihood of success on both of its counts for trade secret misappropriation and its count for breach of contract. D.I. 11 at 9–17. The Court addresses each in turn.

1. **Trade Secret Misappropriation Claims**

Higher Education argues that New York law applies to its state-law trade secret claims. D.I. 2 ¶¶ 112–15; D.I. 11 at 9 n.4. 2U does not dispute that New York law should apply. D.I. 33 at 15 (not disputing). Because the parties do not dispute that New York law applies to the state-law trade secret claims, the Court will apply New York law. The Court will analyze the New York trade secret claim with the federal claim arising under the Defend Trade Secrets Act of 2016 (DTSA) because "the elements for a misappropriation claim under New York law are fundamentally the same as a DTSA claim." *Catalyst Advisors, L.P. v. Catalyst Advisors Invs. Glob. Inc.*, 602 F. Supp. 3d 663, 671 (S.D.N.Y. 2022) (citation omitted).

"To succeed on a claim for the misappropriation of trade secrets under New York law, a party must demonstrate: (1) that it possessed a trade secret, and (2) that the defendants used that trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 117 (2d Cir. 2009) (citing *N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 43–44 (2d Cir. 1999). Similarly, to show misappropriation of trade secrets under the DTSA, a party must show that the defendant "(1)

uses or discloses a trade secret of another (2) without express or implied consent and (3) knows that the trade secret was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use." *Chatham Fin. Corp. v. Milhaus, LLC*, 807 F. Supp. 3d 373, 384–85 (D. Del. 2025) (citation omitted).

Higher Education proffers four alleged trade secrets for which it argues that it has a likelihood of success to show trade secret misappropriation under New York and federal law. D.I. 11 at 11. Higher Education identifies the trade secrets as (1) Modular Landing Page Components and Templates; (2) Customer Data Traits Dictionary and Audience Data; (3) Search Logic Data-Science Model; and (4) Revenue Attribution Methodology. *Id.* The Court addresses each in turn.

For the first alleged trade secret, the Modular Landing Page Components and Templates, Higher Education alleges that 2U is "rebuilding these components piece-by-piece." D.I. 11 at 13. Yet, Higher Education's Senior Vice President, Mr. McGahey, testified in the South Carolina Hearing that he had no knowledge that 2U is using Higher Education's Modular Landing Page Framework or Editable Assets. Transcript of South Carolina Hearing at 143:10–144:12. The evidence that Higher Education cites also fails to convincingly show use of the Modular Landing Page Framework or Editable Asserts. *See* D.I. 11 at 13 (citing D.I. 2, Ex. U at 1, App. A). Thus, the Court cannot conclude that 2U is actually using the first alleged trade secret. Furthermore, Higher Education does not allege that 2U improperly acquired or disclosed the first trade secret. *See* D.I. 11 at 13. Thus, without any improper use, acquisition, or disclosure of the alleged trade secret, there cannot be misappropriation. *See Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 907–08 (3d Cir. 2021) ("There are three ways to establish misappropriation under the DTSA:

improper acquisition, disclosure, or use of a trade secret without consent." (citing 18 U.S.C. § 1839(5))).

The next alleged trade secret is Higher Education's Customer Data Traits Dictionary and Audience Data ("CDTD & AD"). D.I. 11 at 13. Higher Education states that it shared its CDTD & AD with 2U and that the same engineers who received access to the CDTD & AD were also the engineers behind 2U's "effort to cut Higher Ed out" of the contracts entirely. *Id.* However, in the South Carolina Hearing, Mr. McGahey testified that he had no personal knowledge that 2U used the CDTD & AD. Transcript of South Carolina Hearing at 115:3-24. Higher Education's allegations that the same engineers who received the customer data are also involved with 2U's alleged efforts to replace Higher Education do not show that those engineers *used* the CDTD & AD. Moreover, Mr. McGahey's testimony cuts against Higher Education's argument that 2U used the CDTD & AD. Further, Higher Education does not allege improper acquisition or disclosure of the CDTD & AD. *See* D.I. 11 at 13. Thus, Higher Education has not shown a likelihood of success of proving that 2U misappropriated the CDTD & AD. *See Oakwood Lab'ys*, 999 F.3d at 907–08.

Higher Education similarly argues that 2U's documents show efforts to take key aspects of the third alleged trade secret, the Search Logic Data-Science Model. D.I. 11 at 13. Higher Education's own allegations and documentary evidence, however, fail to show that 2U is using Higher Education's Search Logic Data-Science Model. For example, Higher Education shows evidence that a 2U employee said, "I have to figure out what logic they use," in relation to Higher Education's Search Logic Data-Science Model. D.I. 2, Ex. U at 2, 40. The 2U employee's statement suggests that 2U does not have Higher Education's logic available; otherwise, the

employee would not need to "figure out" Higher Education's logic. *See id.* 2U also points out that Higher Education's evidence shows that a 2U employee wrote that Higher Education uses "some ***unknown*** combination" of two data science models. D.I. 33 at 17 (emphasis in original) (citing D.I. 2, Ex. U at 38). Thus, the Court finds that Higher Education has not met its burden to show that it is entitled to relief because Higher Education has not shown that 2U possessed the alleged trade secret, much less misappropriated it. *See Oakwood Lab'ys*, 999 F.3d at 907–08.

With respect to the fourth alleged trade secret, revenue attribution methodology, Higher Education has not shown that 2U misappropriated the alleged trade secret. For example, in the South Carolina Hearing, Mr. McGahey did not testify that he had knowledge that 2U was using Higher Education's revenue attribution methodology. Transcript of South Carolina Hearing at 191:23–193:8. Instead, Mr. McGahey could only deduce that 2U was attributing revenue "similarly" to the method included in Higher Education's alleged trade secret. *Id.* at 192:21–23. Higher Education itself does not allege that it provided the complete revenue attribution methodology to 2U, only the "inputs and outputs of the Methodology." D.I. 11 at 14. Because Higher Education does not show that 2U possessed or used the fourth alleged trade secret, the Court finds that Higher Education has not established a likelihood of success of showing misappropriation for the fourth alleged trade secret. *See Oakwood Lab'ys*, 999 F.3d at 907–08.

Because the Court has found that, for each of the alleged trade secrets that Higher Education proffered, it has failed to show how 2U misappropriated the trade secret, the Court finds that Higher Education has not shown a likelihood of success on its trade secret misappropriation claims. For the same reason, the Court need not discuss whether Higher Education's alleged trade secrets were sufficiently identified nor whether the alleged trade secrets qualify as trade secrets

under federal or New York law. *See Faively Transport,* 559 F.3d at 117 (holding that use of a trade secret is required to show likelihood of success on the merits of trade secret misappropriation).

2. **Breach of Contract**

Higher Education first argues that 2U breached Section 3 of the Agreement. D.I. 11 at 15–16. Section 3, in relevant part, states that each party may use Confidential Information "only in connection with the performance of its obligations under this Agreement." D.I. 2, Ex. A § 3(c). The Agreement additionally defines Confidential Information broadly as "all nonpublic information . . . that is designated as confidential or . . . reasonably should be considered confidential." *Id.* § 3(a). The Agreement explicitly (and non-exhaustively) includes in the definition of Confideintial Information categories such as "information relating to the Disclosing Party's technology, products, services, processes, data, customers, business plans and methods, promotional and marketing activities, finances and other business affairs." *Id.*

Higher Education argues that 2U breached Section 3 of the Agreement because 2U allegedly used Higher Education's Confidential Information to circumvent the Agreement, which exceeds the contractual restriction that a party shall only use Confidential Information in connection with the performance of its obligations under the Agreement. D.I. 11 at 15; *see* D.I. 2, Ex. A § 3(c). Higher Education's argument, however, fails to specify *what* Confidential Information 2U used and *how* that use falls outside of the permitted use of fulfilling 2U's obligations under the Agreement. *See generally* D.I. 11. Higher Education's complaint also omits these details. *See* D.I. 2 ¶¶ 91–103. Without specific allegations, Higher Education cannot show that it is entitled to a preliminary injunction. *See Doe v. U.S. Dep't of Homeland Sec.*, Civil Action No. 3:24-259, 2025 WL 360534, at *5 (W.D. Pa. Jan. 31, 2025) ("[L]ikelihood of success on the

merits is a 'gateway factor', which the plaintiff must establish with the required specificity." (citing *Reilly*, 858 F.3d at 179)), *opinion clarified*, Civil Action No. 3:24-259, 2025 WL 949846 (W.D. Pa. Mar. 28, 2025); *Dunmore Sch. Dist. v. Pennsylvania Interscholastic Athletic Ass'n*, 505 F. Supp. 3d 447, 457 (M.D. Pa. 2020) (citing *Reilly*, 858 F.3d at 179).

Higher Education next argues that 2U breached Section 4 of the Agreement. D.I. 11 at 15-16. Section 4, in relevant part, gives 2U a license to Higher Education's intellectual property for services specified in the parties' statements of work:

> Red Ventures hereby grants 2U (a) an irrevocable, worldwide, royalty free, fully paid-up and non-exclusive license during the Term (including any Exit Assistance Period) for 2U to use any Red Ventures Retained Intellectual Property supplied by Red Ventures to 2U in connection with Red Ventures provision of the Services, in each case solely for 2U's Use in connection with the Services and intended purposes set forth in a Statement of Work, and (b) a perpetual, irrevocable, worldwide, sublicensable, royalty free, fully paid-up and non-exclusive license for 2U to use any Developed Creative supplied by Red Ventures to 2U in connection with Red Ventures' provision of the Services, along with any Red Ventures Retained Intellectual Property contained in such Developed Creative, for 2U's Use in connection with any lawful purpose, in each case, provided, that 2U shall not, during the Term and any Exit Assistance Period, use the foregoing licenses to circumvent in any material respect any Statement of Work entered into hereunder.

D.I. 2, Ex. A § 4.b(i).[1]

Higher Education alleges that 2U violated Section 4 of the Agreement by using Higher Education's intellectual property "to replicate Higher Ed's proprietary systems and user experiences, rebuild the edX.org platform and associated paid landing-page and search experiences outside Higher Ed's environment, develop internal 'takeback' initiatives referred to as 'Project

[1] Red Ventures is the parent company to Higher Education. *See* D.I. 1 at ¶10.

Odyssey' and 'Project Boomerang,' disclose this information to a vendor, and prepare to displace Higher Ed from the parties' contractual relationship." D.I. 11 at 16. Again, Higher Education has failed to specify *what* specific intellectual property 2U used or *how* that use falls outside of the permitted use of fulfilling 2U's obligations under the Agreement. *See id.* Without specific allegations, Higher Education cannot show that it is entitled to the extraordinary remedy of a preliminary injunction. *See Doe*, 2025 WL 360534, at *5 ("[L]ikelihood of success on the merits is a 'gateway factor', which the plaintiff must establish with the required specificity." (citing *Reilly*, 858 F.3d at 179)), *opinion clarified*, 2025 WL 949846; *Dunmore Sch. Dist.*, 505 F. Supp. 3d at 457 (citing *Reilly*, 858 F.3d at 179).

2U further argues that Higher Education ignores the effect of 2U's termination of the Agreement, which nullifies any potential circumvention of the agreement. D.I. 33 at 14; *see* D.I. 2, Ex. A at Sch. 5 § 3. Higher Education counters that whether 2U terminated the agreement is a factual dispute at issue in the case and, thus, 2U cannot show that it has a license to Higher Education's intellectual property under the Exit Assistance section of the Agreement. D.I. 38 at 3. The Court need not determine if 2U terminated the Agreement at this stage of the litigation because, as discussed above, even if 2U had not properly terminated the Agreement and triggered the Exit Assistance provision like Higher Education argues, Higher Education still has not met the burden for a preliminary injunction.

Because Higher Education has not shown a likelihood of success on the merits of either its trade secret misappropriation claims or its breach of contract claims, the Court will not address the other factors for a preliminary injunction. *See Arrowpoint Capital Corp.*, 793 F.3d at 319 (holding

failure to establish any element "renders a preliminary injunction inappropriate" (citation omitted)). For these reasons, the Court denies Plaintiff's Preliminary Injunction Motion.

### B. Plaintiff's Motion for Expedited Discovery

Because Higher Education sought expedited discovery "directed solely to the issues before the Court on Higher Education's pending Motion for Preliminary Injunction" (D.I. 37 at 1) and because the Court has denied Higher Education's Preliminary Injunction Motion, the Court denies Higher Education's Expedited Discovery Motion as moot.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's Preliminary Injunction Motion (D.I. 10) and Expedited Discovery Motion (D.I. 13). An appropriate Order will be entered.